UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal Number 09-242 (MJD/FLN)

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **RESPONSE BY THE UNITED STATES** |
| | ) | **IN OPPOSITION TO DEFENDANT'S** |
| v. | ) | **MOTION TO SUPPRESS STATEMENTS** |
| | ) | |
| Mahamud Said Omar, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by its attorneys, B. Todd Jones, United States Attorney for the District of Minnesota, Assistant United States Attorneys John Docherty, Charles Kovats, and LeeAnn Bell, and Trial Attorney William Narus, respectfully submits its Response to the Defendant's Motion (Docket No. 117) to Suppress Statements.

The defendant's motion seeking suppression of his voluntary and uncoerced statements to law enforcement should be denied. In addition, his statements to the Netherlands Immigration and Naturalization Service should not be suppressed, because those statements were not the result of custodial questioning by law enforcement, and were in any event voluntary. Finally, the defendant's statements on the jail telephone, made in full knowledge of the fact that the calls were being monitored and recorded, are also admissible over the defense's objection.

1

In its Rule 16 disclosures to the defense, the government identified a number of statements given by the defendant. These statements are discussed below, divided first into general categories, and then into individual statements:

**A. NETHERLANDS IMMIGRATION INTERVIEWS.**

### 1. Introduction and Facts.

In November 2008 the defendant left Minnesota, stating that he was going to Saudi Arabia to take part in the *hajj* pilgrimage. The defendant was scheduled to return to Minnesota on December 24, 2008, following the route Jeddah - Dubai - Amsterdam - Minneapolis/St. Paul. After arriving in Amsterdam from Dubai the defendant did not get on his Minnesota-bound flight. Instead he remained in the Netherlands and claimed asylum. This claim commenced an administrative process under Dutch law which included several interviews of the defendant.

The defendant was interviewed by the Netherlands Immigration and Naturalization Service (hereinafter referred to by its Dutch-language acronym, the "IND") on at least three occasions. These interviews occurred on December 26, 2008; April 9, 2009; and June 29, 2009.[1] English language translations of the transcripts of those interviews have been disclosed to the defense in this case.

---

[1] We say "at least three occasions" because there may have been initial, processing-type questioning of the defendant on December 24, 2008 by the first officer of the Royal Netherlands Customs and Border Police to whom the defendant presented himself.

The IND interviews are admissible, first, because they were not custodial.  The defendant's participation was purely voluntary, in that the interviews were made necessary by an affirmative act of the defendant, namely his making a claim to political asylum in the Netherlands.    In  addition,  the  defendant  was  free  not  to participate in the interviews.  Although that would probably have been  detrimental  to  his  asylum  claim,  the  possibility  of  such detriment does not suffice to convert a voluntary administrative interview into a custodial interrogation.

Nor  were  the  IND  interviews  law  enforcement  interrogation. While it is true that immigration officers are government officials who enforce immigration laws, such an expansion of the concept of law  enforcement  interrogation  would  make  every  administrative encounter,   between   any   person   and   any   government,   an "interrogation" subject to the Fifth Amendment.

Finally, it is not clear that these statements are even within the scope of the defense's motion to suppress statements (docket number 117).  That motion begins by stating that suppression is sought  of  "any  statements  alleged  to  have  been  made  by  the Defendant" but then goes on to specify that suppression is sought of  "jail  calls"  and  "*custodial*  statements  that  the  Defendant allegedly gave *pursuant to law enforcement interrogation* in the Netherlands  and  in  the  United  States."  (Emphasis  added.)    The sharpening  and  focusing  of  the  motion  in  the  second  clause  is

important, because the first clause, seeking suppression of "all statements," cannot be taken literally. Defendant cannot legally seek to suppress every statement he has ever made, only those statements to which the Constitution extends. Defendant may, and we anticipate he will, seek to exclude other statements he might have made, for example to alleged co-conspirators, from evidence, but that is a different concept entirely from suppression, which must be constitutionally based. Unless the defendant believes that the IND interviews were custodial law enforcement interrogation, therefore, these statements are not included within his motion.

Finally, even if the Court should find that custodial interrogation by law enforcement occurred, the absence of a *Miranda* warning would have no effect on the statement's admissibility. Statements to foreign law enforcement are admissible, despite not being preceded by a *Miranda* warning, so long as the statement is voluntary. Only when US law enforcement participates in foreign interviews so substantially that US and foreign law enforcement form a joint venture will a *Miranda* warning be required before a statement to foreign law enforcement authorities can be admitted.

None of the IND interviews involved US law enforcement in any way. The evidence will show that neither the FBI nor any other US law enforcement agency participated in the interviews. Nor did US law enforcement participate in planning the interviews, observe the interviews, or suggest questions to the interviewers.

4

The IND interviews are therefore admissible.

## 2.   Applicable Law.

A statement given by a defendant to law enforcement, whether US law enforcement or foreign law enforcement, is not admissible in a United States court if the statement has been compelled.  *In re Terrorist Bombings of US Embassies in East Africa (Fifth Amendment Challenges)*, 532 F.3d 177, 199 (2d Cir. 2008).  Because any constitutional violation occurs at trial, when the compelled statement is sought to be introduced, there is no need for an analysis of the extraterritorial reach of the Fifth Amendment. *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264.  However, as elaborated upon below, there is no need for foreign law enforcement agents, not acting in a joint venture with United States law enforcement, to administer *Miranda* warnings before custodial interrogation.  Suppressing foreign statements because of a lack of *Miranda* warnings will have no deterrent effect on the conduct of foreign police agencies. Therefore, there is no point in insisting on *Miranda* warnings as a precondition of admission of statements that are purely the work of foreign law enforcement.

"The core protection afforded by the Fifth Amendment is a prohibition on compelling a criminal defendant to testify against himself at trial," *United States v. Hogan*, 539 F.3d 916, 924 (8th Cir. 2008) (*quoting United States v. Frazier*, 408 F.3d 1102, 1109 (8th Cir. 2005).  "The Fifth Amendment's protection applies only

when the accused is *compelled* to make a testimonial communication that is incriminating," *United States v. Hogan* at 924 (*quoting Barrett v. Acevedo*, 169 F.3d 1155, 1167 (8th Cir. 1999))(emphasis in original).

In the context of statements to the police, the Supreme Court held in *Miranda* that because custodial interrogation has the potential of undermining the Fifth Amendment by exposing the defendant to coercion, warnings must be given before custodial interrogation proceeds. *Miranda v. Arizona*, 384 U.S. 436 (1966). A person is "in custody" if his freedom of action is so curtailed that, under the totality of the circumstances, a reasonable person in the shoes of the suspect would not have felt free to end the encounter with the police and leave. *Yarborough v. Alvarado*, 541 U.S. 652, 663-65 (2004). A person is being "interrogated" if they are being subjected to "express questioning or its functional equivalent" by the police. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). The "functional equivalent" of express questioning consists of "words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301.

"Interrogation" does not include routine border questioning intended to determine a person's admissibility into the country, *United States v. Layne*, 973 F.2d 1417, 1420-21 (8th Cir. 1992), and it generally does not include statements made at a meeting with law

enforcement requested by the suspect, *United States v. Koontz*, 143 F. 3d 408, 411 (8th Cir. 1998).

Suppressing otherwise voluntary statements taken by foreign law enforcement officers without a *Miranda* warning will not be likely to deter other foreign law enforcement officers from questioning subjects without giving a *Miranda* warning, *United States v. Chavarria*, 443 F.2d 904, 905 (9th Cir. 1971)(" When the interrogation is by the authorities of a foreign jurisdiction, the exclusionary rule has little or no effect upon the conduct of foreign police"); *United States v. Molina-Chacon*, 627 F.Supp. 1253, 1262 (E.D.N.Y. 1986). Therefore, the law is well-settled that a voluntary statement taken by foreign law enforcement need not be preceded by a *Miranda* warning in order to be admitted in a US court. *In re Terrorist Bombings of US Embassies in East Africa (Fifth Amendment Challenges)*, 552 F. 3d 177, 202 (2d Cir. 2008).

So long as a statement to foreign law enforcement is voluntary it will be admitted.

Although the Eighth Circuit does not seem to have had reason to consider the issue, other circuits have held that the *Miranda* requirement applies if US law enforcement participates in a foreign interrogation to such an extent that it can be said that there is an investigative joint venture between the US law enforcement agency and its foreign partner. If there is a joint venture involving the participation of US law enforcement personnel, then,

these circuits have held, the deterrence rationale retains its force, and *Miranda* warnings must be given before custodial interrogation proceeds. *Terrorist Bombings in East Africa*, *supra*, 552 F. 3d at 203; *United States v. Heller*, 625 F.2d 594, 599 (5th Cir. 1980); *Pfeifer v. U.S. Bureau of Prisons*, 615 F.2d 873, 877 (9th Cir. 1980). A joint venture will be found if US law enforcement personnel "actively participate" in the foreign interrogation, Although the precise meaning of "actively participate" is not entirely clear from the cases, there can be no question that there can be no "active" participation if there is no participation at all.

### B.   ROTTERDAM STATEMENTS.

#### 1.   Facts

The defendant was arrested on November 8, 2009 by the Netherlands National Police Service. On November 9 and 10, the defendant was interviewed at the Central Police Station in Rotterdam, the Netherlands. Present for these interviews were two Dutch police officers; two Special Agents of the Federal Bureau of Investigation; an Assistant United States Attorney from the District of Minnesota; and two interpreters. The defendant was given a *Miranda* warning from an FBI "Advice of Rights" form, and waived the protections of the *Miranda* decision in writing, both on November 9 and on November 10. Those waivers are attached to this response as Exhibit A. The defendant was also apprised of his

8

rights under Netherlands law, and finally, the defendant waived his right to prompt presentment before a United States judicial officer. Breaks were taken. Coffee and sandwiches were brought into the meeting room. On November 11, 2009, the defendant, who had by then been moved from Rotterdam to another location, was approached for another interview. The defendant declined, stating he was not feeling well. The defendant's request was honored; law enforcement, both Dutch officers and FBI Agents, left immediately.

FBI reports of the two Rotterdam interviews and the attempt to have a third interview have been disclosed.

At any hearing, the United States will demonstrate that the defendant's rights under the Constitution were scrupulously honored and that there is no basis for suppression. The government agrees that because the FBI Agents participated extensively in this interview, *Miranda* warnings were required. The evidence will show that they were given. The evidence will further show that the two Rotterdam interviews were completely voluntary on the defendant's part.

The statements should be admitted and the defendant's motion seeking suppression should be denied.

### C.   JAIL CALLS

Since being returned to the United States the defendant has been housed at the Anoka County Jail. Pursuant to a general policy of the jail, all calls made by inmates, except privileged calls

(such as calls to or from their lawyers) are monitored and recorded. The government has been obtaining tapes of the defendant's jail calls on a regular basis, and has been turning copies of the tapes over to the defense on a regular basis. The defendant, in his motion seeking suppression of "all statements" has specifically included "jail calls." The motion seeking suppression of jail calls should be denied.

The evidence will show that the defendant was warned that his non-legal telephone calls were liable to being monitored and recorded. The Eighth Circuit has held that when these warnings have been given to an inmate, and the inmate continues to use the jail's telephone system, the inmate has impliedly consented to the recording of his telephone calls. *United States v. Lucas*, 499 F.3d 769, 780 (8th Cir. 2007). There is no additional requirement that jail staff go further and specifically warn inmates that what they say on the telephone might be used against them in court. Lucas, 499 F.3d at 780; *see also, United States v. Eggleston,* 165 F.3d 624, 626 (8th Cir. 1999).

In sum, all of defendant's various statements are admissible. Accordingly, the defendant's motion seeking suppression of those statements should be denied.


Dated: March 12, 2012                     Respectfully Submitted,

                                          B. TODD JONES
                                          United States Attorney

                                          s/ John Docherty

                                          BY: JOHN DOCHERTY
                                          Assistant US Attorney
                                          Attorney ID No. 017516X

                                          CHARLES J. KOVATS
                                          LEEANN K. BELL
                                          Assistant U.S. Attorneys

                                          WILLIAM NARUS
                                          Trial Attorney
                                          National Security Division

11